UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BIG SKY CIVIL TRUST *et al.*,

    *Plaintiffs*,

v.

UNITED STATES OF AMERICA,

    *Defendant*.

Civil Action No. 21-1282 (TJK)

## MEMORANDUM OPINION

David S. Braun, proceeding pro se on behalf of himself and as sole trustee of Big Sky Civil Trust, sued the United States, alleging a broad conspiracy against him perpetrated by various federal and state government agencies, local governments, and private companies. Braun alleges that these entities conspired to maintain false database entries on him, and that these entries have prevented him from obtaining a job, prevailing in legal actions, and have been the basis for harassment and unlawful surveillance. For relief, Braun seeks "corrective action" to "fix the name" in various government databases and to "completely correct issues" found in his complaints to the Department of Defense. The United States moved to dismiss, arguing that the Court lacks subject-matter jurisdiction because Braun's claims are patently insubstantial, and that he has otherwise failed to a state a claim for relief. For the following reasons, the Court will grant the United States' motion to dismiss for lack of subject-matter jurisdiction.

**I.   Background**

Braun alleges that he has been the target of coordinated plans between certain federal agencies, state and local government components, and private telecommunications companies over the past three decades. The complaint includes allegations involving, among others, the

Department of Defense, the Department of Justice, the National Security Agency, the Postal Service, the Office of Management and Budget, the United States Attorney's Office for the District of Montana, the State of Montana, the Montana State Police, the Sheriff of Gallatin County, Montana, Yahoo, Verizon, Google, and Microsoft. *See, e.g.*, ECF No. 19 ¶¶ 11, 19, 43, 46, 50, 80; ECF No. 19-1 at 50.

According to the complaint, Braun began having trouble finding employment in Colorado in 1990, and then in Ohio from 1993 to 1995, and most recently in Nevada in 2011. *See* ECF No. 19 ¶ 9. Braun allegedly had several phone interviews that, although they "went well," did not generate any offers "as if the hiring party had been told their [sic] was a legal reason that they could not hire [him]." *Id.* As a result, Braun began running background checks on himself through reverse phone number lookups, internet searches, local police records, and Federal Bureau of Investigation background requests. *Id.* ¶¶ 10–11; ECF No. 19-1 at 40–46. These searches, Braun alleges, show that there were "several fictious occupants" in his Montana condo also named David Braun (although with different middle initials), who had criminal records for narcotics trafficking. ECF No. 19 ¶ 10. Braun also alleges that during other, unrelated court proceedings, he was asked about his prior military or government service and that this suggests there are other unnamed databases containing incorrect information about him. *Id.* ¶¶ 16–17.

Braun further alleges that because of these erroneous database entries, courts have effectively blackmailed him and he therefore "cannot sue" in his own name. ECF No. 19 ¶¶ 12–13. To support this claim, Braun points to his lack of success in lawsuits against private companies such as Verizon and Microsoft. *See id.* ¶¶ 4, 12, 50; ECF No. 19-1 at 72. Likewise, Braun allegedly attempted to reach private settlements with Verizon, Yahoo, Google, Microsoft, the Office of Management and Budget, and the National Security Agency, but no entity responded to

2

his overtures because of his purported inability to sue. *See* ECF No. 19 ¶¶ 29, 35, 43–45, 50; ECF No. 19-2 at 55–59. For example, Braun alleges that because he cannot sue it, the NSA did not respond to his request for $750,000,000 after it denied his Freedom of Information Act request. *See* ECF No. 19-2 at 58. Braun also allegedly tried to discuss these database entry issues with the NSA, the Governor of Montana, and both U.S. Senators from Montana, but did not receive any responses. *See* ECF No. 19 ¶ 43.

In 2021, Braun alleges that he submitted a complaint to the Department of Defense that outlined the conspiracy against him. *See* ECF No. 19-1 at 47. The submission stated that starting in 2011, the Postal Service fabricated records to enable classified "military classified narcotics interdiction rooms" to surveil Braun and that he was subject to "military style harassment." ECF No. 19 ¶ 50; ECF No. 19-1 at 49.

Over the next decade, Braun has supposedly been spied on by his neighbors, harassed with "no trespass" orders, had his home vandalized, and been falsely declared incompetent. *See, e.g.*, ECF No. 19-1 at 47–61; No. 19-2 at 4. According to Braun, during this same period, the government drugged and kidnapped him, stole his laptop, wiretapped his phone, and illegally accessed his email. *See* ECF No. 19-2 at 47; ECF No. 19-1 at 76–77, 82–83; ECF No. 19 ¶¶ 94–101. Braun characterizes this series of events as "attempted murder and terrorism on a US Citizen." ECF No. 19 at 26.

Braun now sues the United States over all the above. He appears to sue under the Administrative Procedure Act, 5 U.S.C. § 702, and under 42 U.S.C. § 1983, seeking "corrective action" related to various database entries or records about him. ECF No. 19 at 26. Specifically, Braun requests that the Court: (1) correct his status of "cannot sue" in the Court's database; (2) remove database entries reflecting any military service; (3) remove any other database entries in

public and classified databases; (4) correct his submission to the Department of Defense; (5) correct his initial communications to the Department of Defense; and (6) correct various access and privacy problems relating to his email addresses and mobile phone data.  *See* ECF No. 19.

The United States moved to dismiss the complaint, arguing that the Court lacks subject-matter jurisdiction over these claims as patently insubstantial under Federal Rule of Civil Procedure 12(b)(1) and that Braun fails to state a claim for relief under Rule 12(b)(6).  *See* ECF No. 21.  In his opposition, Braun states that he "do[es] not categorically insist that the motion be denied" and that he could file an amended complaint to cure any deficiencies "unless the [C]ourt feels amendment is futile."  ECF No. 23 at 1, 6.  The Court agrees with the United States that it lacks subject-matter jurisdiction over the complaint and will therefore grant the motion.

**II.     Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction."  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  Federal courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Thus, when faced with a motion to dismiss under Rule 12(b)(1), "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence."  *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  In reviewing such a motion, while the Court is not limited to the allegations in the complaint and may consider materials outside the pleadings, the Court must "accept all of the factual allegations in [the] complaint as true."  *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (quoting *United States v. Gaubert*, 499 U.S. 315, 327 (1991)).

**III.     Analysis**

The Court lacks subject-matter jurisdiction over Braun's claims because they are "patently insubstantial." *Tooley v. Napolitano*, 586 F.3d 1006, 1009–10 (D.C. Cir. 2009). "Federal courts are without power to entertain claims otherwise within their jurisdiction if [the claims] are so attenuated and unsubstantial as to be absolutely devoid of merit." *Ord v. District of Columbia*, 587 F.3d 1136, 1144 (D.C. Cir. 2009) (cleaned up) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536 (1974)). Patently insubstantial claims are "flimsier than 'doubtful or questionable'—they must be 'essentially fictitious.'" *Id.* (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)). "Claims that are 'essentially fictious' include those that allege bizarre conspiracy theories, fantastic government manipulations of the will or mind, or any sort of supernatural intervention." *Bickford v. United States*, 808 F. Supp. 2d 175, 179 (D.D.C. 2011) (cleaned up).

The Court is mindful that pleadings filed by pro se litigants are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008). But Braun's allegations fall under the ambit of "bizarre conspiracy theories" that warrant dismissal. To begin with, Braun's misfortune allegedly comes at the concerted hands of—by the Court's count—no fewer than five federal agencies, multiple components of state and local governments, and five private companies. *See, e.g.*, ECF No. 19 ¶¶ 19, 50–52. Braun alleges that these public and private entities have been working together for over three decades to maintain false database entries so that he cannot obtain a job, bring lawsuits in his own name, or even reach out-of-court settlements with private companies. *See, e.g., id.* ¶¶ 9, 12–13; ECF No 19-1 at 72. He also alleges that because of these phony database entries, the United States has worked with private telecommunications companies to harass him and illegally intercept his electronic communications. *See* ECF No. 19 ¶¶ 94, 101; ECF No. 19-1 at 47–60, 76–77.

At this stage, the Court accepts as true Braun's allegations that, among other things, he has struggled to obtain employment, succeed in prior lawsuits, and receive responses to his inquiries from various government agencies and elected officials. But Braun has alleged "no facts or circumstances to suggest that those misfortunes occurred because agents of the federal government"—or any other government or entity—have been maintaining inaccurate database entries and targeting him for harassment. *Riles v. Geithner*, 693 F. Supp. 2d 1, 3 (D.D.C. 2009). Indeed, Braun offers nothing suggesting that these unnamed databases exist at all. He merely lists "a series of unconnected events," such as his inability to obtain employment and lack of litigation success—and alleges that these events happened because he has been "singled out for harassment by the government." *Curran v. Holder*, 626 F. Supp. 2d 30, 34 (D.D.C. 2009).

For example, Braun alleges that because of the erroneous database entries, courts have designated him as a party that "cannot sue." ECF No. 19 ¶¶ 12. As a result, his suits against private companies and federal agencies—requesting millions of common stock shares and millions of dollars in damages—have stagnated and are sometimes "strangely dismissed on 12(b)(6) motion to dismiss" grounds. ECF No. 19 ¶¶ 30, 34–35; ECF No. 19-1 at 72–83; ECF No. 19-2 at 54–59. On its face, there is nothing surprising about any of that. But in any event, Braun offers only "conclusory allegations" to attribute these legal tribulations to his alleged database conspiracy, and he does not connect them to any action on the part of the United States. *Curran*, 626 F. Supp. 2d at 34 (quoting *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 233 (D.D.C. 2007).

Braun's allegation that "military classified narcotics interdiction" teams are manipulating the Postal Service "address database" to facilitate private companies illegally disclosing his personal data is cut from the same cloth. *See* ECF No. 19 ¶ 50; ECF No. 19-1 at 47. The complaint teems with similar allegations: that because of incorrect database entries about his criminal history

6

and employment background, government agents and private companies have taken other illegal actions against him.  But "[c]ourts in this circuit have held that claims of a widespread conspiracy cannot go forward when a plaintiff offers only a laundry list of wrongful acts and conclusory allegations to support [his] theory of conspiracy."  *See, e.g.*, *Lamb v. ATF*, No. 20-cv-3036 (TJK), 2022 WL 203433, at *3 (D.D.C. Jan. 24, 2022) (quoting *Shao v. Roberts*, No. 18-cv-1233 (RC), 2019 WL 249855, at *16 (D.D.C. Jan. 17, 2019)); *Wightman-Cervantes v. Mueller*, 750 F. Supp. 2d 76, 79 (D.D.C. 2010) (dismissing for lack of subject-matter jurisdiction a complaint "alleg[ing] a wide-ranging conspiracy among high-ranking state and federal officials" when the "factual allegations [were] conclusory and unsupported").

Braun's claims seeking "corrective action" related to his communiques with the Department of Defense fare no better, because they too depend on "patent frivolity."  *Lamb*, 2022 WL 203433, at *4.  Braun alleges that beginning in 2011, he experienced "military style harassment" including forced entry attempts on his house, slashed tires, and "[come-ons] in the street, where like you pump gas and people come out the shadows and engage you in a not so friendly conversation."  ECF No. 19-1 at 49.  He also alleges that his neighbors spied on him at the behest of government agencies and that law enforcement has mistakenly concluded that he has a mental disorder.  *Id.* at 50–56, 80, 93.

For one thing, it is unclear what "corrective action" the Court could take related to Braun's emails to the Department of Defense.  But in any event, these conspiratorial allegations also match those courts have found to be "patently insubstantial."  *See Baszak v. FBI*, 816 F. Supp. 2d 66, 69 (D.D.C. 2011) (determining claims that "arise from allegations of surveillance and conspiracy theories" are patently insubstantial).  At bottom, Braun alleges a multi-decade conspiracy in which several federal and state government components conspired with private companies to create false

database entries on him, prevent him from obtaining employment, and eventually physically and electronically harass him.

Braun's opposition to the United States' motion, ECF No. 23, does not save the complaint either. Most of the opposition is dedicated to distinguishing his allegations from the facts in cases the United States cites only for the basic proposition that federal courts have limited jurisdiction. Otherwise, Braun merely reiterates his request for "corrective action," but at no point does he explain why the complaint contains anything more than "bizarre conspiracy theories."[1] *Best*, 39 F.3d at 330.

## IV. Conclusion

For all the above reasons, the Court will grant the United States' motion and dismiss the case for lack of subject-matter jurisdiction. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 10, 2022

---

[1] In his opposition, Braun also expresses an intent to amend the complaint unless the Court determines that amendment would be futile. But he does not present any "new claims," *Wilson v. Cox*, 828 F. Supp. 2d 20, 34 (D.D.C. 2011), nor does he specify how he would amend the complaint to remedy its jurisdictional deficiencies. In the end, "it is unclear . . . how he specifically intends to amend" the complaint. *Creecy v. District of Columbia*, No. 10-cv-841 (CKK), 2011 WL 1195780, at *11 (D.D.C. Mar. 31, 2011). Moreover, the operative complaint is Braun's second amended complaint, and each prior version contained materially similar allegations. *See Zalduondo v. Aetna Life Ins. Co.*, 845 F. Supp. 2d 146, 160 (D.D.C. 2012) (explaining that "repeated failure to cure deficiencies by amendments previously allowed" may be grounds for denying leave to amend (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))). Thus, Braun's expressed intent to amend the complaint provides the Court no reason not to dismiss it as patently insubstantial.